**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL DOCKET NO.: 3:03CR7-V**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | Memorandum and Order |
| | ) | |
| **BARRY WAYNE GRIGGS,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion To Suppress and Motion To Dismiss Indictment, both filed May 5, 2005. (Documents #33, #34) The Government responded on June 10, 2005. (Documents #40, #41) The Court also incorporates by reference the Government's "Notice Of Intent To Use 404(b) Evidence" and exhibits attached thereto, filed May 10, 2005.[1] (Document #36)

### I. Factual Background

The instant case arises out of allegations that Defendant Griggs, a convicted felon[2], was in possession of a large number of firearms, ammunition, and an explosive device on November 5, 2002, at his home in Anson County, North Carolina. (Response, ¶2) On January 28, 2003, a federal grand jury sitting in the Western District of North Carolina returned a single-count **Bill of Indictment** against Defendant alleging receipt and possession of firearms by a convicted felon in violation of 18 U.S.C. §922(g).

On June 23, 2003, a **Superseding Bill of Indictment** was returned against Defendant. The Superseding Bill of Indictment included additional offenses and alleged Defendant's receipt and possession of explosive materials (an improvised destructive

---

[1] The Government did not file its Rule 404(b) Notice until after the defense moved to suppress evidence and sought to dismiss the Second Superceding Bill of Indictment. (The Court also did not have the benefit of the information provided via the Government's notice when it drafted the show cause order.)

[2] Defendant has a prior felony conviction for Assault & Battery With Intent To Kill, on March 2, 1994, in the Superior [*sic*: presumably referring to the "Circuit" Court] Court of Chesterfield County, South Carolina. (Response, ¶3)

device) on or about November 5, 2002.  (Counts Two - Five, Superseding and Second Superseding Bill of Indictment)

On or around March 19, 2003, while Defendant was on pretrial release for the instant charges, Defendant allegedly purchased a firearm and ammunition from a WalMart Store in Cheraw, South Carolina.  (Response, ¶5; Gvmt.'s 404(b) Notice, ¶1) The specific make and model of the items purchased are: a Marlin, model 60, .22 caliber rifle and Remington brand .22 caliber ammunition.  As a result, Defendant was indicted on federal charges in the District of South Carolina, Florence Division, and an arrest warrant issued.  (*See* DSC Criminal Docket No.: 4:04CR151)  Defendant faced charges of possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. §922(g)(1) and receipt of firearms and ammunition by a person under indictment for a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §922(n).[3]

On March 10, 2004, when Anson County Deputies arrested Defendant Griggs on the South Carolina charges, deputies found firearms and ammunition in Defendant's North Carolina residence. The items at issue as a result of the March 10th arrest allegedly include: a Remington .20 gauge shotgun, a .22 caliber revolver, five rounds of Remington High Velocity .20 caliber ammunition, and nine rounds of .380 caliber ammunition.

On April 26, 2004, in the Western District of North Carolina, Defendant was charged in a **Second Superseding Bill of Indictment** reflecting the events that allegedly occurred on March 10, 2004 - Defendant's possession of more weapons and ammunition.[4]  (Count Six - Second Superseding Bill of Indictment)

Each Indictment issued from the Western District of North Carolina also provided notice of forfeiture as to the specific firearms and ammunition identified therein.  On May

---

[3] In the District of South Carolina, Defendant was originally charged with violations of 18 U.S.C. §§ 922(g), 924(a)(2) and 924(e).  On July 28, 2004, a two-count Superseding Indictment charged Defendant in Count One with violations of 18 U.S.C. §§922(g)(1), 924(a)(2) and 924(e) and in Count Two, with violations of 18 U.S.C. §§922(n) and 924(a)(1).  The grand jury also made special findings pursuant to the U.S. Sentencing Guidelines.

[4] Specifically, Defendant faces the following charges in this Court: two alleged violations of 18 U.S.C. §§922(g)(1) (*Counts 1 and 6*), 18 U.S.C. §§842(I) and 844(a) (*Count 2*), 26 U.S.C. §§5841, 5861(d) and 5871 (*Count 3*), 26 U.S.C. §§5822, 5861(c) and 5871 (*Count 4*), and 26 U.S.C. §§5861(I) and 5871 (*Count 5*).

3, 2005, the Government withdrew its forfeiture allegation.

On October 5, 2004, Defendant proceeded to trial in the District of South Carolina, The Honorable Terry L. Wooten, presiding. On October 6, 2004, the jury returned a verdict of guilty as to both §922 counts. Defendant's post-trial motions were denied. Defendant is currently awaiting sentencing on the South Carolina charges.

## II. Motion To Dismiss Second Superseding Bill Of Indictment

Defendant moves to dismiss the Second Superseding Bill of Indictment pursuant to the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. *U.S. Const. Amend. V.* The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. There are two components to this guarantee. The first provides protections against the imposition of cumulative punishments for the same offense in a single criminal trial while the second protects against being subject to successive prosecutions for the same offense, without regard to the actual imposition of punishment. United States v. Ragins, 840 F.2d 1184, 1187 (4th Cir. 1988); *accord* United States v. Dixon, 509 U.S. 688 (1993); Abney v. United States, 431 U.S. 651, 660-61 (1977); Blockburger v. United States, 284 U.S. 299, 302 (1932).

Defendant seeks relief pursuant to the Fifth Amendment's guarantee against successive prosecution. Defendant's double jeopardy claim appears to arise only with regard to Count Six. As described above, Count Six relates to Defendant's alleged conduct on March 10, 2004 - the date of Defendant's arrest on the South Carolina charges. Both Count One in 4:04CR151 and Count Six in this case allege violations of 18 U.S.C. §922(g)(1) and, therefore, require proof of the same essential elements. However, the South Carolina prosecution alleges possession occurred on or about March 19, 2003. In addition, a careful review of the respective indictments reveal that the weapons and ammunition identified in Count Six are different from those identified in the South Carolina prosecution.[5]

---

[5] The South Carolina prosecution only sought to hold Defendant responsible for possession or receipt of the Marlin .22 caliber rifle and Remington .22 caliber ammunition. Contrast these items with those described within Count Six of the Second Superseding Bill of Indictment in this district - "a .20 gauge shotgun, a .22 caliber revolver, five (5) rounds of

Further, Count Two in 4:04CR151 alleges violations of 18 U.S.C. §§ 922(n) and 924(a)(1). The Section 922(n) offense required the Government to prove that Defendant was under indictment for a crime punishable by imprisonment for a term exceeding one year at the time he committed the unlawful act. Presumably, the pending indictment refers to the pending offenses in this district. Nonetheless, because Count Two does not require proof of the same essential elements as §922(g), and because different weapons are at issue, there is no double jeopardy concern.

Finally, Defendant contends that, at minimum, his "rights are violated by the Doctrine of Collateral Estoppel," which "precludes re-litigation of a fact, question or a right in issue." (Motion, at ¶5) In support, Defendant points to overlapping witness testimony with regard to "the acts and events giving rise to the present indictment in this District." (Motion, at ¶¶3, 4) While a trial transcript was not provided by the Government, the Government represents that during the criminal proceedings in the District of South Carolina, "the only reference to the North Carolina charges were in the form of 404(b) testimony." (Response, ¶12) Thus, those issues were not fully litigated or put before the jury for decision, beyond a reasonable doubt, as to guilt or innocence. In conclusion, the Court is satisfied that the conduct at issue here, as outlined in the charging documents, is separate and distinct from the conduct that gave rise to the criminal charges in the District of South Carolina.

For these reasons, Defendant's successive prosecution argument is without merit.[6]

### III. Motion To Suppress

Defendant moves to suppress "any and all items seized by Wildlife Enforcement Officers, Anson County Deputy Sheriffs and Bureau of Alcohol, Tobacco and Firearms Agents in this matter." (Motion, at 1.) Defendant specifically alleges that North Carolina Wildlife Enforcement Officer, Agent R. A. Davis, Jr., violated his constitutional right to remain silent during questioning on November 4, 2002. (Motion, at ¶¶1, 2.) Agent Davis'

---

Remington High Velocity .20 caliber ammunition, and nine (9) rounds of .380 caliber ammunition."

[6] The undersigned does not reach the question of whether double jeopardy concerns may arise at sentencing.

affidavit refers to questions posed to Defendant during his initial contact with Defendant and another individual. Agent Davis was attempting to investigate a high-powered rifle shot in a nearby field.  Based upon the officer's description of the encounter, the statements made by Defendant do not appear to be incriminating.[7]  The only questioning on November 4, 2002, mentioned in Agent Davis' affidavit refers to what appears to have been a consensual encounter with Sgt. Caulk at the Anson County Sheriff's Department initiated by Defendant.  According to Defendant, the information obtained by Agent Davis during the interrogation was then used to obtain a search warrant of Defendant's residence. (Motion, at ¶2.)  During the search of Defendant's residence the following day, the weapons and ammunition Defendant is charged with possessing in Counts One through Five were discovered by law enforcement.

The Government concedes that on November 4, 2002, the arresting officer may have violated Defendant's *Miranda*[8] rights in continuing his questioning but rejects Defendant's contention that the physical evidence seized during the search is subject to suppression.  (Response, at 1.)   For purposes of resolving Defendant's motion to suppress, the Court begins its analysis by presuming that a *Miranda* violation, in fact, occurred.  Thus, the issue before this Court is whether the physical evidence - as opposed to Defendant's actual unwarned statements - obtained during the November 5, 2004 search of Defendant's residence must be suppressed.  *See*, United States v. Sterling, 283 F.3d 216, 219-20 (4th Cir.2002)(fruit of the poisonous tree doctrine does not apply to physical evidence recovered after unwarned statements); Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326 (2000)(establishing *Miranda* as a rule of law of constitutional import).

In United States v. Patane, the United States Supreme Court expressly held that the failure to give a suspect *Miranda* warnings does not necessarily require suppression of physical fruits of a suspect's unwarned, but voluntary, statements.  United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 2626-27 (2004); United States v. Reynolds, 334 F.

---

[7]  Essentially, Defendant denied having a gun, denied having a vehicle at the premises, and then refused to allow the officer to inspect a weapon in plain view in the vehicle.

[8]  Miranda v. Arizona, 384 U.S. 436 (1966).

Supp.2d 909 (W.D.Va. 2004)("unwarned, yet voluntary, statements fall outside the scope of the Self-Incrimination Clause.") (*citing* Patane, 124 S.C. at 2627). The Supreme Court explained in Pavane that the self-incrimination clause, which the *Miranda* warnings are designed to protect, "is not implicated by the admission into evidence of the physical fruit of a voluntary statement." Pavane, 542 U.S. at 2626. Consistent with United States v. Pavane, and the Due Process Clause of the Fifth Amendment, this Court will conduct a voluntariness inquiry to determine whether the physical evidence at issue here falls within the holding of Pavane.[9] The Court will defer ruling on Defendant's motion to suppress pending a *voir dire* evidentiary hearing to take place immediately prior to commencement of trial in this case.

### IV. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Defendant's Motion To Dismiss The Second Superseding Bill of Indictment is hereby **DENIED**;

2) Immediately prior to commencement of trial, the Court will conduct a brief suppression hearing consistent with this Memorandum and Order, namely, an evidentiary hearing aimed at determining whether Defendant's alleged unwarned statements were made voluntarily;

3) The Court **DEFERS RULING** on Defendant's Motion To Suppress; and

4) This matter is ready to proceed to trial during the July 2005 Trial Term in the Charlotte Division, with calendar call on **Monday, July 25, 2005, at 9:30 a.m.**

---

[9] The voluntariness inquiry calls for evaluation of "the totality of the circumstances."

**Signed: July 19, 2005**

Richard L. Voorhees
United States District Judge